IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | |
|---|---|
| WILLIAM D. ANDERSON, § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> COMMISSIONER OF SOCIAL § <br> SECURITY ADMINISTRATION, § <br> § <br> Defendant. § | CIVIL ACTION NO.  5:20-CV-00040-RWS-CMC |

## ORDER

The above-entitled and numbered civil action was referred to United States Magistrate Judge Caroline M. Craven pursuant to 28 U.S.C. § 636.  The August 10, 2021 Report of the Magistrate Judge which contains her proposed findings of fact and recommendations for the disposition of such action has been presented for consideration.  Docket No. 14.  Plaintiff William D. Anderson filed objections to the Report and Recommendation.  Docket No. 17.

The Court has conducted a careful *de novo* review of those portions of the Magistrate Judge's proposed findings and recommendations to which Plaintiff objected.  *See* 28 U.S.C. § 636(b)(1) (District Judge shall "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").  For the reasons set forth below, the Court has determined that the Report of the Magistrate Judge is correct and Plaintiff's objections are without merit.

## BACKGROUND

Plaintiff protectively applied for disability on February 10, 2016, alleging disability beginning May 3, 2012, which was later amended to June 12, 2013.  (Tr. 213–14).  The

Commissioner denied Plaintiff's application initially and upon reconsideration. (Tr. 149–54). After Plaintiff requested a hearing, an Administrative Law Judge ("ALJ") held a video hearing on this matter and issued a decision denying Plaintiff's application on April 7, 2017. (Tr. 7–29). The Appeals Council denied review on May 25, 2017. (Tr. 1–6).

The Court remanded the matter for a new hearing. (Tr. 738). Pursuant to the remand order, the Appeals Council directed the ALJ to further address factors set forth in § 404.1527(c): examining relationship, treatment relationship, supportability, consistency, and specialization in relation to Dr. Pappas' many opinions; and to discuss the consistency between the opinions of Dr. Pappas, Dr. York and Dr. Butler. *Id.*

After holding a new hearing on July 17, 2019, the ALJ found that Plaintiff had amended the date of onset of disability to June 12, 2013. *Id.* She issued an unfavorable decision on October 2, 2019, denying Plaintiff's application for Disability Insurance Benefits. (Tr. 735–62). Specifically, the ALJ found Plaintiff not disabled from the amended onset date of June 12, 2013, through December 31, 2017. (Tr. 755). The Appeals Council denied review of Plaintiff's appeal on January 31, 2020, leaving the ALJ's decision to stand as the Commissioner's final administrative decision. (Tr. 731–34). *See* 42 U.S.C. § 405(g).

Plaintiff again seeks judicial review by the Court. In his original brief, Plaintiff asserted the ALJ erred in weighing the opinions of Dr. Pappas and Dr. York; in finding that he did not meet Listing 12.15; in assessing his residual functional capacity for medium work; and in considering the combination of his impairments.

## ANALYSIS

**I.   Report and Recommendation**

On August 10, 2021, the Magistrate Judge issued a 41-page Report and Recommendation (R&R), recommending the above-entitled and numbered social security cause of action be

affirmed. Docket No. 14. In her R&R, the Magistrate Judge set forth in detail the medical evidence of record. Regarding some of the more recent evidence pertaining to Plaintiff's back issues and back pain, the record provides as follows.

In 2012, Dr. Mahir Patel examined Plaintiff on a consultative basis and noted Plaintiff's history of degenerative disc disease. (Tr. 741). Dr. Patel noted Plaintiff's physical exam was "unremarkable aside from reduced thoracolumbar flexion. In addition, the claimant showed obvious pain when performing his muscular strength." *Id.* However, upon examination of his lower extremities, Plaintiff had 5/5 strength bilaterally. *Id.* Plaintiff was unable to hop on one leg due to pain, but otherwise he was able to walk and ambulate normally. *Id.* Dr. Patel added that Plaintiff was cooperative and gave good effort during the exam. (Tr. 307–08). Dr. Patel reported "the claimant can be expected to sit normally in an 8-hour workday with normal breaks," and he had mild standing and walking limitations. (Tr. 309).

Plaintiff appeared for an appointment with Dr. Andrea L. York at the Veterans Administration (VA) clinic on March 18, 2013, complaining of back pain. (Tr. 316–17). Dr. York noted Plaintiff had pain with range of motion, positive straight leg raise (left), and equivocal straight leg raise (right). *Id.*

On April 13, 2013, Dr. Paul Pappas noted Plaintiff continued to complain of back pain with no acute changes overall. He further indicated that Plaintiff was disabled from the current job. Upon examination at that time, Dr. Pappas noted a body mass index of 35.26. He also noted that Plaintiff was constitutionally well developed. According to the ALJ, there was minimal examination at that time, yet Plaintiff endorsed back and joint pain. Dr. Pappas assessed Plaintiff with lumbago and advised he follow up on an "as-needed" basis. (Tr. 324, 364, 750).

On July 8, 2013, Dr. Pappas signed a letter stating that Plaintiff reached a point where he

subjectively did not feel able to continue working due to his pain.  (Tr. 327, 750).  On September 23, 2013, Dr. Pappas signed a letter stating that Plaintiff was unable to sit or stand for more than 20 to 30 minutes and required three hours a day of lying down to relieve pain.  (Tr. 328, 751).  Additionally, on November 7, 2013, Dr. Pappas signed a statement that Plaintiff could not be released for any kind of work.  (Tr. 751).

In August of 2013, the VA decided that Plaintiff was not entitled to individual unemployability because the evidence of the record does not show that [he is] unable to secure or follow a substantially gainful occupation as a result of service connected disabilities."  (Tr. 428).  The VA noted Plaintiff was only precluded from heavily physically demanding jobs and could be employed in a light or sedentary position.  The VA determined Plaintiff was 40% disabled from September 21, 2010 and was subject to compensation for his degenerative disc disease with low back pain, which were aggravated by his time in the military.  (Tr. 424).

Dr. Pappas provided correspondence dated September 23, 2013 regarding Plaintiff's disability report.  The letter stated "the patient is unable to sit or stand for more than 20–30 min at a time and this has been documented also in his VA primary care evaluation. This has gradually worsened. The patient also has required more and more time to lie down to relieve his pain—3 plus hours a day. . . . The patient's pain affects his concentration and he also has increased anxiety and I am concerned that this will create further undue stress on him that could lead to blood pressure problems, possible diabetes, coronary disease, etc."  Dr. Pappas noted he had known the patient for many years and despite years of pain Plaintiff attempted to keep working and he had been "diligent in his work."  (Tr. 328, 366, 703).

On October 7, 2013, Plaintiff reported to the VA clinic for lumbar spine x-rays under the direction of Dr. York.  Dr. York found mild degenerative spondylosis in the lumbar spine and

diffuse narrowing of the lumbar interspaces. (Tr. 584). Plaintiff applied for VA Vocational Rehabilitation and Employment Services. (Tr. 416–22). In November of 2013, Plaintiff was approved for disability benefits from the VA due to "a significant impairment in terms of the ability to prepare for, obtain, or retain employment consistent with [his] aptitudes, abilities, and interests." (Tr. 329, 413).

By February 25, 2014, Dr. Pappas noted Plaintiff was being seen by the VA Medical Center. (Tr. 742). Dr. Pappas added that Plaintiff continued to have chronic pain related to his back and was unable to work. (Tr. 451, 742). Objectively, Plaintiff's gait was normal, but he did have muscle spasm in the lumbar spine and moderate pain with motion. (Tr. 453, 742). At that time, Dr. Pappas only assessed Plaintiff with lumbago and advised Plaintiff to follow up as needed. *Id.*

On August 14, 2014, Plaintiff returned to Dr. Pappas with complaints of right sided pain with some radiation into the buttocks. (Tr. 454–56). The physical examination yielded identical results from the previous examination; however, Dr. Pappas assessed Plaintiff with sciatica due to displacement of the lumbar disc. (Tr. 456, 742). Subsequently, on August 23, 2014, magnetic resonance imaging (MRI) scans revealed slight increased degenerative changes and bulging of the disc of the lumbar spine. (Tr. 1106).

On March 14, 2016, it was noted that Plaintiff presented to Dr. Pappas with complaints of congestion, but he was negative for back pain, joint pain, joint swelling, muscle weakness and neck pain. (Tr. 533–35, 742). During the physical examination, the visual overview of all four extremities was normal and Plaintiff had no edema. (Tr. 534). At that time, it appeared that Plaintiff was taking only Astelin and Mucus Relief ER, and no pain medications were mentioned. (Tr. 536).

X-rays at CHRISTUS St. Michael on March 26, 2016 showed mild osteophyte formation of the lumbar spine. (Tr. 1061). Despite some complaints of arthritic pain, x-rays of the knee showed no fractures or dislocation. (Tr. 1062). In a more recent report dated April 25, 2017, Dr. Pappas indicated there was no change in Plaintiff's disability status. (Tr. 751, 1101).

The Magistrate Judge also discussed the March 26, 2016 consultative examination by Dr. James Butler. (Tr. 329–30, 548–53). Dr. Butler noted Plaintiff presented in "no acute distress," had reduced range of motion in high shoulder and lower back flexion and "can be expected to sit, stand and walk normally in an 8-hour workday with normal breaks. . . The claimant has mild limitations with lifting and carrying weight due to low back pain." Dr. Butler noted a positive straight leg raise at 60 degrees bilaterally and difficulty squatting and rising. (Tr. 552). Dr. Butler also noted "there are limitations on bending, stooping, crouching and squatting and so on and the claimant will be able to perform these occasionally due to low back pain." (Tr. 553). The x-ray showed mild osteophyte formation from L3 through L5. (Tr. 554).

Plaintiff returned to the VA clinic on April 25, 2016 for a follow up appointment. Dr. York noted Plaintiff had quit taking Lyrica and Hydrocodone because he believed they caused his cancer. Plaintiff reported he "would rather be in pain than take a chance." Dr. York reviewed his medications and discussed alternative treatment plans. (Tr. 641).

After discussing many medical records from Dr. Pappas, including the more recent April 25, 2017 report wherein Plaintiff did not complain about back pain, joint pain, joint swelling, muscle weakness, or neck pain, the Magistrate Judge then set out part of the ALJ's discussion of the evidence:

> Worthy of noting, it appears that the claimant did not have significant treatment from Dr. Pappas prior to Dr. Pappas' multiple 2013 opinions. The claimant presented with complaints of pain; however, physical examinations were essentially within normal limits except for muscle spasm and pain with motion.

> Generally, there has been only minimal abnormalities noted upon objective examination up [to] November 2013. . . . Accordingly, the undersigned generally affords Dr. Pappas multiple 2013 opinions with little weight. It appears that the claimant had not been significantly treated within about two years of the opinions; and, Dr. Pappas is a family medicine doctor, not an orthopedic specialist. Moreover, his opinions in relation to disability are reserved for the commissioner.
>
> In a more recent report, dated April 2017, Dr. Pappas indicated that there was no change in the claimant's disability status. (Exhibit B22F/38) For reasons previously stated, this opinion is also afforded little weight. Conversely, the undersigned affords great weight

Docket No. 14 at 19–30 (quoting Tr. 751).

Among other things, the Magistrate Judge found the evidence from consultative examiner Dr. Butler dated March 26, 2016, and evidence from other sources (Tr. 751–53) support the ALJ's decision to give Dr. Pappas's opinions little weight. Docket No. 14 at 30. The Magistrate Judge found the ALJ had good cause to give little weight to Dr. Pappas's opinions from September 23, 2013 and November 7, 2013 and his other opinions because his statements were brief and conclusory and not supported by the record evidence. *Id.* The Magistrate Judge further found the ALJ abided by the district court and Appeals Council remand in this matter by considering and weighing the opinion of Dr. York. *Id.* at 31 (citing Tr. 753).

The ALJ noted Dr. York was a "treating physician," and that she opined Plaintiff had flareups with prolonged standing, walking, sitting, and strenuous physical activity, including bending and squatting. (Tr. 753). However, it was also noted that, on July 21, 2016, there was no significant functional loss or functional impairment of the back. (Tr. 602, 753). The ALJ found Dr. York's assessment was generally consistent with Dr. Pappas' objective findings, as well as Dr. Butler's opinion, and afforded this assessment with "some weight." (Tr. 753). The Magistrate Judge found the ALJ provided appropriate consideration of Dr. York's opinion.

The Magistrate Judge also found the ALJ correctly determined Plaintiff retained the ability

to perform a reduced range of medium work. Additionally, the Magistrate Judge found no error in the ALJ's determination at step three of the sequential evaluation that there was no impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, including Listing 12.15.

## II.     Plaintiff's Objections

Plaintiff objects to the Magistrate Judge's recommendation, asserting primarily that the ALJ erred by failing to properly address the factors set forth in Section 404.1527(c) when assigning less than controlling weight to the opinions of Plaintiff's treating physicians, Dr. Pappas and Dr. York. Docket No. 17 at 1. Plaintiff argues the ALJ highlighted a few "normal" findings to support her decision and improperly discredited the opinions of Drs. Pappas and York. According to Plaintiff, he has had more than one examination that revealed he had a positive straight leg raise, weakness, limited range of motion of the cervical and lumbar spine and problems with gait and ambulation. *Id.* at 9. Among other things, Plaintiff asserts as follows in his objections:

> This claim was remanded with specific instructions to address. The ALJ did not comply with the remand. Instead he chose to search the record for normal findings to support his decision, discredited the Plaintiff and the opinions of Drs. Pappas and York. An Administrative Law Judge may not disregard a treating physician's opinion and sidestep the *Newton* analysis based solely on a non-examining SAMC's opinion. 20 C.F.R. § 404.1527(a)(2) ("Treating source means your own acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you."); see *Osborn v. Berryhill*, No. 3:16-CV-44-B-BN, 2017 U.S. Dist. LEXIS 81235, 2017 WL 2312910, at *34 (N.D. Tex. May 11, 2017) (finding because Administrative Law Judge failed to identify any contradictory first-hand evidence the Administrative Law Judge was required to proceed in applying the factor analysis) (citing *Newton*, 209 F.3d at 456, report and recommendation adopted, No. 3:16-CV-44-B-BN, 2017 U.S. Dist. LEXIS 80980, 2017 WL 2306581 (N.D. Tex. May 26, 2017). To be clear, the medical opinions of an agency consultant do not constitute first-hand medical evidence, because they were formed on a second-hand basis from a review of then existing medical records. *Davis v. Berryhill*, No. 4:16-CV-0429-0-BL, 2017 U.S. Dist. LEXIS 137904, 2017 WL 3701689, at *10 (N.D. Tex. Aug. 10, 2017), report and recommendation adopted, No. 4:16-CV-0429-0-BL, 2017 U.S. Dist. LEXIS 137319, 2017 WL. 3674656

> (N.D. Tex. Aug, 25, 2017); see also *Steven T. W. v. Berryhill*, No. 3:18-CV-00030-BT, 2019 U.S. Dist, LEXIS 53456, 2019 WL 1429347 at *6 (N.D. Tex. Mar. 28, 2019)[.]
>
> Dr. Butler who performed a consultative examination mirrored most of the findings of Dr. Pappas, and Dr. York, i.e., positive straight leg raise, antalgic gait, reduced range of motion in the high shoulder and lower back flexion. He also noted "there are limitations on bending, stooping, crouch, crawling and squatting and so on." (T-553) Plaintiff's position is that if the Administrative Law Judge would have given more weight to Dr. Pappas' and Dr. York's opinions he should have found Plaintiff disabled. If the Administrative Law Judge had considered such opinion evidence, it is conceivable that the Administrative Law Judge may have come to a different RFC determination. It is well established that the RFC finding reflects a disability claimant's maximum remaining ability to perform work activities despite his or her medically determinable impairments. 20 C.F.R. § 416.945(a); see *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). The RFC assessment is based on "**all of the relevant medical and other evidence**," 20 C.F.R. § 416.945(a)(3)), including, but not limited to: medical history, medical signs, and laboratory findings: the effects of treatment and reports of dally activities, lay evidence, recorded observations, medical source statements, and work evaluations. SSR 96-8p, 1996 SSR LEXIS 5, 1996 WL 374184, at *5.
>
> Based on the consistency of the opinions of Drs. Pappas, Butler and York, a reasonable mind cannot believe Plaintiff could perform work at the medium exertional level. It was error for the Administrative Law Judge to discredit Drs. Pappas and York's opinions by pointing to only a portion of the records. The Administrative Law Judge was required medical to consider the length of treatment relationship (10 years); frequency; treatment relationship; the support of Drs. Pappas and York's opinion that is supporting by the medical evidence; consistency; and specialization. The proper analysis was not performed in this case.

*Id.* at 15–17 (emphasis in original).

### III.  *De Novo* Review

Following remand and a final hearing in mid-July 2019, an ALJ issued an 18-page decision on October 2, 2019, finding Plaintiff was not under a disability, as defined in the Social Security Act, at any time from June 12, 2013, the amended onset date, through December 31, 2017, the date last insured.  (Tr. 738–55).  In so concluding, the ALJ found Plaintiff has the residual functional capacity to perform medium work, except Plaintiff can never climb ladders, ropes or scaffolds, stop occasionally, crouch occasionally; and Plaintiff must avoid all exposure to hazards, including

unprotected heights and dangerous machinery, concentrated exposure to humidity and extreme heat. Plaintiff is also limited to occasional interaction with supervisors, coworkers and the public. (Tr. 747).

The overarching issues on appeal are whether substantial evidence of record supports the Commissioner's decision that Plaintiff was not disabled during the relevant period, and whether the ALJ applied the correct legal standards in reaching that decision. In his objections, Plaintiff argues the ALJ erred in her assessment of Plaintiff's residual functional capacity, focusing on the limited weight afforded to the opinions of Plaintiff's treating physicians. The Court now considers whether the ALJ erred on remand by failing to sufficiently address the opinions of Plaintiff's treating physicians in her residual functional capacity determination.

Residual functional capacity ("RFC") is defined as the most that a person can still do despite recognized limitations. *Scott C. P. v. Berryhill*, Civil Action No. 3:18-CV-00036-D-BH, 2019 WL 1318365, at *11 (N.D. Tex. Feb. 26, 2019), *report and recommendation adopted*, No. 3:18-CV-0036-D, 2019 WL 1315894 (N.D. Tex. Mar. 22, 2019) (citing 20 C.F.R. § 404.1545(a)(1)). It "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." *Id.* (quoting Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996)). An individual's residual functional capacity should be based on all of the relevant evidence in the case record, including opinions submitted by treating physicians or other acceptable medical sources. *Id.* (citing 20 C.F.R. § 404.1545(a)(3) (2012); SSR 96-8p, 1996 WL 374184, at *1).

The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985). The ALJ may find that a claimant has no limitation or restriction as to a functional capacity when there is no

allegation of a physical or mental limitation or restriction regarding that capacity, and no information in the record indicates that such a limitation or restriction exists. *Scott*, 2019 WL 1318365, at *11 (citing SSR 96-8p, 1996 WL 374184, at *1). The ALJ's residual functional capacity decision can be supported by substantial evidence even if she does not specifically discuss all the evidence that supports her decision or all the evidence that she rejected. *Id.* (citing *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994)).

A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record. *Id.* (citing *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). Nevertheless, the substantial evidence review is not an uncritical "rubber stamp" and requires "more than a search for evidence supporting the [Commissioner's] findings." *Id.* (quoting *Martin v. Heckler*, 748 F.2d 1027, 1031 (5th Cir. 1984) (citations omitted in *Scott*)). Courts "must scrutinize the record and take into account whatever fairly detracts from the substantiality of the evidence supporting the" ALJ's decision. *Id.* Courts may not reweigh the evidence or substitute their judgment for that of the Secretary, however, and a "no substantial evidence" finding is appropriate only if there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Id.* (citing *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988) (citations omitted in *Scott*)).

Relevant to consideration of Plaintiff's objections is the rule for assessing medical opinion evidence for claims, like Plaintiff's, filed before March 27, 2017.[1] An ALJ must consider all

---

[1] For claims filed on or after March 27, 2017, the ALJ is required to apply the new regulations. *Pearson v. Comm'r of Soc. Sec.*, No. 1:20-CV-166-HSO-RPM, 2021 WL 3708047, at *4 (S.D. Miss. Aug. 11, 2021), *report and recommendation adopted*, No. 120-CV-166HSO-RPM, 2021 WL 3663073 (S.D. Miss. Aug. 18, 2021) (citing 20 C.F.R. § 404.1520c). Through the new regulations, the Administration revised the procedures and standards for evaluating medical opinions and prior administrative medical findings, abrogating the treating physician rule. *Id.* (citing Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules"), 82 Fed. Reg. 5844 (Jan. 18, 2017); 20 C.F.R. § 416.920c(a)). As such, ALJs are "no longer required to give controlling weight" to the opinions of treating physicians. *Id.* (citing *Pearson*, 2021 WL 3373132, at *4–*5 (E.D.N.Y. Aug. 3, 2021)). Instead, the ALJ considers the persuasiveness of medical opinions from different medical sources. 20 C.F.R.

medical opinions but retains the ultimate determination of disability status. *Coffey v. Saul*, No. 4:19-CV-00390-Y, 2020 WL 4005637, at *4 (N.D. Tex. June 24, 2020), *report and recommendation adopte*d, No. 4:19-CV-390-Y, 2020 WL 4000835 (N.D. Tex. July 15, 2020) (citing 20 C.F.R. §§ 404.1527(b), (d)(1)).

Under the treating physician rule, controlling weight is assigned to the opinions of a treating physician if it is well supported by both medically acceptable clinical and laboratory diagnostic techniques, and consistent with other substantial evidence in the record. *Id.* (citing 20 C.F.R. § 404.1527(c)(2); *Martinez v. Charter*, 64 F.3d 172, 176 (5th Cir. 1995)). An ALJ may decrease the weight assigned to a treating physician's opinion for good cause, and disregard statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. *Id.* (citing *Leggett*, 67 F.3d at 566; *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994); *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)). Conclusory statements to the effect that the claimant is "disabled" or "unable to work" are legal conclusions, not medical opinions, and are not entitled to any special significance. *Id.* (quoting 20 C.F.R. § 404.1527(d)(1); also citing *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003)).

The Fifth Circuit has held that "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if an ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § [404.1527(c)]." *Id.* (quoting *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000)). To reject a treating physician's opinion without controverting medical evidence, an ALJ must apply a six-factor analysis that considers: (1) the examining

---

§ 404.1520c(b)(2). In evaluating persuasiveness, the ALJ considers five factors: (i) supportability; (ii) consistency; (iii) the source's relationship with the patient; (iv) the source's specialty; and (v) "other factors that tend to support or contradict" the opinion. *Id.* (citing 20 C.F.R. § 404.1520c(c)). The most important factors in evaluating persuasiveness are supportability and consistency. *Id*. (citing 20 C.F.R. § 404.1520c(b)(2)).

relationship; (2) the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors which tend to support or contradict the opinion. *Id.* (citing 20 C.F.R. § 404.1527(c); SSR 96-6p, 1996 WL 364180, at *3; SSR 96-2p, 1996 WL 374188, at *4 (S.S.A. July 2, 1996)).

In *Coffey*, the plaintiff argued the ALJ erred by giving his former primary care physician's medical opinions no weight without properly analyzing his opinions under the six factors set forth in 20 C.F.R. § 404.1527(c). 2020 WL 4005637, at *4. As to the physician's opinion, the ALJ stated as follows: "The record also contains a medical source statement from Luke Heitz, MD, but this opinion is given no weight, as there are no treatment or examination records in the file from Dr. Heitz that could support his opinion. Moreover, the record overall does not support the limitations on exertional, postural, and mental activities described in this opinion." *Id.* at *4–*5. The court held as follows:

> While the only evidence in the record regarding Dr. Heitz's opinion is the October 2016 Medical Source Statement ('Statement') referenced by the ALJ, such Statement provides evidence that the ALJ properly considered the six factors set forth in 20 C.F.R. § 404.1527(c) prior to rejecting Dr. Heitz's opinion. To begin with, as to factors one and two, where the ALJ is to evaluate the examining and treatment relationship between Coffey and Dr. Heitz, the Statement relied upon by the ALJ indicates that Dr. Heitz treated Coffey three times in a six-week span on September 14, 2016, October 20, 2016, and October 27, 2016. (Tr. 387.)
>
> As to factors three, four, and six, in which the ALJ evaluates the supportability and consistency of the physician's opinion as well as any other supportive or contradictory factors, the ALJ noted that there were no treatment or examination records on file that supported Dr. Heitz's opinion in the medical source statement. In fact, a review of such Statement shows Dr. Heitz stated that Coffey's symptoms would interfere with her attention and concentration frequently and that she would likely miss more than four days of work per month, and then he, contradictorily, indicated that Coffey's prognosis was good and she could tolerate moderate work stress. (Tr. 387–88.) As to factor five, more weight is generally given 'to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.' 20 C.F.R. § 404.1527(c)(5). However, Coffey in her brief, does not assert that Dr. Heitz is a specialist and, as such, this factor is not relevant.

> While the ALJ's decision did not explicitly reference the six factors set forth in 20 C.F.R. § 404.1529(c), the ALJ's consideration of and citation to Dr. Heitz's opinion indicates he implicitly considered such factors. (Tr. 14-7.) Consequently, the ALJ did not err in evaluating Dr. Heitz's opinion, and remand is not required.

*Id.* at *5.

Here, the ALJ reasoned in much more detail as follows:

> Worthy of noting, it appears that the claimant did not have significant treatment from Dr. Pappas prior to Dr. Pappas' multiple 2013 opinions. The claimant presented with complaints of pain; however, physical examinations were essentially within normal limits except for muscle spasm and pain with motion. Generally, there has been only minimal abnormalities noted upon objective examination up [to] November 2013. . . . Accordingly, the undersigned generally affords Dr. Pappas multiple 2013 opinions with little weight. It appears that the claimant had not been significantly treated within about two years of the opinions; and, Dr. Pappas is a family medicine doctor, not an orthopedic specialist. Moreover, his opinions in relation to disability are reserved for the commissioner.
>
> In a more recent report, dated April 2017, Dr. Pappas indicated that there was no change in the claimant's disability status. (Exhibit B22F/38) For reasons previously stated, this opinion is also afforded little weight.
>
> Conversely, the undersigned affords great weight to the opinion of consultative examiner Dr. James Butler. . . Dr. Butler's opinion is supported by his significant objective findings and is consistent with the residual functional capacity described herein.
>
> In terms of opinions of the state agency medical consultants, the undersigned finds that the state agency consultants' assessment of the claimant's residual functional capacity is well supported and is not inconsistent with the findings of the undersigned Administrative Law Judge. The state agency medical consultant opined the claimant is somewhat limited by his irritability but the impact of these symptoms does not wholly compromise the claimant's ability to function independently, appropriately, or effectively on a sustained basis. They further opined that the claimant is able to understand, perform, and remember detailed noncomplex instructions, make decisions, concentrate for extended periods, interact with others, and respond to changes. (Exhibits B3A, B5A) As such, the undersigned affords the state agency medical consultants' opinion with great weight.
>
> The undersigned notes that VA records contained various opinion. The undersigned carefully considered the finding of the Veterans Administration along with the rest of the evidence in the record. The Veterans Administration has several disability

programs under different laws, and the eligibility requirements differ in each instance. Although similar, the eligibility requirements under the disability programs administered by the Veterans Administration and by the Social Security Administration are not the same. Thus, a person who meets the requirements under a Veterans Administration program does not necessarily qualify under the disability provisions of the Social Security Act. The undersigned must determine whether the requirements contained in the Social Security Act are met in this case.

A disability questionnaire indicated essentially no functional limitations in multiple areas (including pain, range of motion deficits) due to back impairments. It also noted no evidence of pain with weight bearing, but occasional use of the cane was noted for ambulation. Worthy of noting, the claimant did not present to the hearing with assistive devices, nor did he testify to the use of such. Turning back to the questionnaire, no functional limitation due to the feet or hips were found. (Exhibit B15F/ 38-70) Consistent with the residual functional capacity described in this decision, the claimant's physician noted that the impact of the claimant's back condition precludes prolonged exertion, no heavy lifting, and no heavy carrying of excess poundage. (Exhibit B15F/45)

* * *

The undersigned notes that in terms of the claimant's specific functional limitations assessed by Dr. Pappas' related to standing, walking, and lying down. Dr. Pappas overall opined that the claimant was unable to perform work-related activities. Such opinions are vastly contrary to the Dr. Butler's opinion. Nevertheless, Dr. Pappas' examination notes show complaints of back pain and documents objective findings of muscle spasm and occasional tenderness. These findings are generally consistent with Dr. Butler's finding of a positive straight leg raise. Nevertheless, Dr. Butler's opinion is more consistent with the overall objective findings.

Of note, treating physician Dr. Andrea York opined that the claimant had flare-ups with prolonged standing, walking, sitting, and strenuous physical activity including bending and squatting. However, it was also noted that there was no significantly functional loss or functional impairment of the back. (Exhibit B15F/39) Dr. York's assessment is generally consistent with Dr. Pappas' objective findings, as well as Dr. Butler's opinion. As such, the undersigned affords this assessment with some weight.

Lastly, the undersigned considered the statements of Ronnie Hawthorne, the claimant's friend. Mr. Hawthorne noted that the claimant has difficulties due to constant pain. He added that the claimant is irritable and tries to stay away from others. (Exhibit B16E) To the extent consistent with the objective findings and with the residual functional capacity herein, the undersigned affords reasonable weight to Mr. Hawthorne's statements.

In sum, the above residual functional capacity assessment is supported by the

> objective medical evidence of record and, in part, the observations of the consultative examiner and state agency medical consultants.

(Tr. 751–53).

Similar to the court in *Coffey*, even though the ALJ's October 2, 2019 decision did not explicitly reference the six factors set forth in 20 C.F.R. § 404.1529(c), the Court finds the ALJ's consideration of Dr. Pappas's and Dr. York's opinions indicate she implicitly considered such factors. *See Coffey*, 2020 WL 4005637, at *5. The ALJ has sole responsibility for determining the claimant's disability status. *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990); 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled"). "Treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance." SSR 96-5p at *2. "Among the opinions by treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable to work.'" *See Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003). "These determinations are legal conclusions that the regulations describe as 'reserved to the Commissioner.'" *Id.*

The Court finds that the ALJ gave valid reasons for the weight afforded on remand to both physicians. Despite Plaintiff's contention, the ALJ on remand properly considered the opinions of Dr. Pappas and Dr. York. Consequently, the ALJ did not err in evaluating the opinions of Plaintiff's treating physicians, and remand is not required.

The Court further finds, consistent with the Magistrate Judge, substantial evidence supports the ALJ's decision. Evidence from consultative examiner Dr. Butler, dated March 26, 2016, and evidence from other sources (Tr. 751–53) support the ALJ's decision. As noted above, Dr. Butler found no muscle spasms, normal muscle strength and only a slightly reduced range of motion in Plaintiff's lumbar spine. (Tr. 550–52). Dr. Butler opined that his examination findings showed

only "some mild difficulties secondary to low back pain" and that he would not "expect this to cause any long-term physical limitation." (Tr. 552). Dr. Butler specifically found Plaintiff could sit, stand and walk normally during an eight-hour workday; he does not need an assistive device for walking; and he only has mild limitations with lifting and carrying due to low back pain. *Id.*

Additionally, when Dr. Robert Hughes performed a residual functional capacity assessment in October of 2016, Plaintiff listed his symptoms as pain, sustained concentration and persistence limitations, social interaction limitations and ability to adapt limitations. (Tr. 131–34). Dr. Hughes noted the alleged limitations caused by the claimant's symptoms were not fully supported by the evidence of record. (Tr. 131). He opined Plaintiff is limited to carrying fifty pounds occasionally but could lift 25 pounds frequently. According to Dr. Hughes, Plaintiff can stand, walk, or sit with normal breaks for about six hours in an eight-hour workday. (Tr. 132).

"The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Leggett*, 67 F.3d at 565–66. Having reviewed the record, the Court finds the record demonstrates that the Administration correctly applied the applicable legal standards and that substantial evidence supports the Administration's determination that Plaintiff is not disabled.

## CONCLUSION

After reviewing the transcript, the parties' briefs and the Report and Recommendation, the Court has determined that the Report of the Magistrate Judge is correct and Plaintiff's objections are without merit. It is accordingly

**ORDERED** that Plaintiff's objections are overruled and the Report of the Magistrate Judge (Docket No. 14) is **ADOPTED** as the opinion of the Court. It is further

**ORDERED** that the above-entitled Social Security action is **AFFIRMED**.

**So ORDERED and SIGNED this 27th day of September, 2021.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE